EreemaN, J.,
delivered the opinion of the court.
The original bill of Alley is filed for the purpose of enforcing a judgment obtained by Archibald White against Thompson Gardenhire, in the Supreme Court of Tennessee at this place, in 1839, for about $1,200, and charged to have been assigned in writing to complainant in 1844; and also to have satisfaction set aside that had been entered of said judgment by reason of sale of land, to which the title failed.
The bill alleges in substance that Arch. White recovered judgment in this court in 1839 for about $1,200, and transferred it to complainant by assignment in writing, about 1844; that an execution, based on said judgment, was levied on the land sought to be reached by this bill, the same bought by complainant, for which he got a deed, and commenced an action of ejectment to recover possession, which ultimately failed by judgment of the Supreme Court at this place, at the September Term, 1855, for reasons given in the opinion found in 3 Sneed, 110.
The bill then charges, that while said suit was pending, Elizabeth White, administratrix of James' White, deceased, filed her bill against Thompson Gard-enhire the defendant, J. M. Carrol and others, to subject this land, together with other lands and personal property, to the payment of a debt due her intestate; that this land (the hundred and sixty acres in controversy) had been conveyed by Thompson Garden- *226 hire to said Carrol by deed, dated in 1839. The bill states that said Thompson Gardenhire had taken the benefit of the bankrupt act of 1840, and that said deed to Carrol, and the legality and binding effect of said bankruptcy were both investigated in said suit (as remembered) by Elizabeth White as administratrix; both were declared and held null and void; that the cause was so finally settled, and by a decree of the Supreme Court at Knoxville, in that case, the said one hundred and sixty acres of land, with another tract which had been entered in the name of one Holloway, of sixty-four acres, were ordered to be sold to satisfy said judgment. These, two tracts of land were sold by the clerk of this court, and bid off by defendant Carrol, in his own name; but the bill alleges “that he in fact bid it in for his father-in-law, the said Thompson Gardenhire, by agreement between them, so as to cover up the title against other creditors, and especially against the debt of complainant; that Carrol was very poor and not able to give security at the time of his purchase, but by an agreement between him and Gardenhire on the one part, and John Hoge and Carrol, his son-in-law, on the other, one W. J. Kelly went on the note as security, with the understanding that if the note was not promptly paid, Hoge was to pay it and take the lands.
The bill further charges, that by a subsequent arrangement Thompson Gardenhire sold said Hoge the said 64 acres of laid, and other lots of land which he held and had covered up in the names of differ *227 ent ones of bis family, and in this way paid off said notes of Carrol, and that in all this Carrol aided and co-operated with Gardenhire, and the known and express purpose was to secure the 160 acre tract, (a choice piece of land) as a home and residence for said Gardenhire. After the notes were paid off, it is alleged that Carrol, though he had not advanced one cent for the land, procured a deed from the clerk of the Supreme Court for the 160 acres, in- 1854, after Gardenhire’s death, who seems to have died in that year. The bill charges that Gardenhire continued to live on the land from the time of sale up to his death.
The bill then states, that after the failure of the ejectment suit, complainant had filed a bill in the Chancery Court, when this bill was filed against said Carrol, the widow and heirs of Thompson Gardenhire, stating the foregoing facts substantially, asking, among other things, to be allowed to treat said judgment as not having been satisfied by Carrol, that the satisfaction be set aside, the land attached, as in fact the land of Gardenhire, and that the parties be enjoined from conveying or otherwise further complicating the title, and that it be sold subject to the widow’s dower, to satisfy complainant’s debt. That said bill alleges also, that his debt was justly due, that said Garden-hire had no effects out of which it could be made except said 160 acres of land, together with the other charges of fraud hereinbefore stated. This bill is alleged to have been filed in the spring of 1856. It is alleged that this bill asked the sale of the land *228 subject to the widow's dower, or to have it assigned to her, and charged the insolvency of Gardenhire, so far as personalty was concerned, (and as then remembered) no one had administered on his estate, but the bill charges that afterwards one Stone did administer, and was made party defendant. It is then alleged, that all proper proceedings were had to put said cause at issue, the proof was taken and the case ready for hearing, but. continued from time to time by Carrol, till commencement of the war, and that now, by the ravages of war, the papers were lost.
Complainant alleges, that he is not able to give an exact statement of the charges in said bill, nor the answers, nor of the proof taken in the cause, much less to furnish a copy of either, but that the above is a substantial statement of the facts alleged in the bill, and the progress of the cause up to the destruction of the papers and records.
He then prays that he may have leave to file the present bill in lieu of the original and in the nature of a bill of revivor, requiring defendants to answer the same, asking that they file copies of the original bill if they have. it, and that they show in their answer what was their original answer, and that the original attachments and injunction be held in full force and effect as if they had not been lost, and for new attachments and injunctions to take effect from that time to hold said property, and then prays, as in his original bill, that the land be sold subject to the widow’s dower, and proceeds applied to payment of his debt, and he be allowed to take proof, and prove *229 the facts as in his original bill, and for such other and proper relief as he may be entitled to.
This bill was demurred to, demurrer overruled, and parties required to answer. The demurrer raises the first question to be settled.
The first cause of demurrer assigned is, that the bill shows that there is a suit pending in this [the Chancery] Court for the same subject-matter; the second, that the bill shows that a record in another suit for the same cause is lost, and no steps have been taken to supply' the loss; and third, it is an attempt to supply a lost record in a way unknown- to the rules of the court or the law of the land.
We think the grounds of the demurrer are not well taken.
The bill, it is true, presents somewhat of an anomalous aspect, but may be fairly treated as substantially a bill filed to have the benefit of a former lien by attachment, and of an injunction, of which the party had been practically deprived by accident and misfortune, without blame on his part, and also seeking by his allegations to put the original facts again at issue, and have the benefit of them, as between complainant and defendants, and a decree, such as was sought by the former bill. In the case of Bright v. New land, 4 Sneed, 441, a bill was filed to enforce the lien acquired by a judgment creditor by the levy of an execution on land from a justice of the peace, and to have the land sold in satisfaction of complainants’ debt. The levy had been made, the paper returned to Circuit Court to have the land condemned, but, on *230 examination, it turned out that the warrant and note on which the judgment had been founded could not be found, but had been either destroyed or lost. It was insisted in this case that the loss of the warrant might have been supplied in a court of law. By causing the execution to be levied on the land, the court say complainant acquired an inchoate lien upon the land, which he was hindered from perfecting by the accidental loss, or wrongful act of defendant, without any fault on his part, and that there was no doubt of the jurisdiction of a court of equity to relieve in such a ease.
We think the party in this case had by his attachment and injunction acquired an inchoate lien, dependent for its effectiveness, it is true, upon the. result of the subsequent proceedings to be had in the case, yet such a right as he is entitled to have the benefit of as against accident, such as is charged in the bill, where such accident is not the result of any negligence or misconduct on his part. As to the general relief sought in the bill against the land, it states the complainant’s grounds, and gives the defendants opportunity to answer the facts, and compel complainant to prove them. It was not necessary to attempt to supply the papers under our statute upon the allegations of this bill, as it clearly shows it is impossible to have done so, so that if the party can not have relief by some proceeding of the character here attempted, he is deprived of all remedy by an inevitable accident over which he had no control, and which he could not have prevented.
*231 The next question we consider is the rights of Matilda Gardenhire, the widow, who files her cross-bill, which she afterwards, by supplemental bill, asks to be taken as an original bill for dower in the 160 acres of land. In this she goes on to state the former proceedings substantially as Alley has done in his bill, except that she charges the fact of fraud alone to be in the procurement of the deed by Carrol from the Clerk of the Supreme Court after the death of Gardenhire in 1854, and that Gardenhire had paid the money, or rather the sixty-four acres of land and three forty-acre tracts, to Hoge, in consideration that Hoge should pay the Carrol note and save the land for a home fcr Gardenhire, and does not charge this arrangement as between Carrol and Gardenhire as a fraudulent device to cover the property up from creditors.
If such an arrangement is proven, and the facts are that the Carrol note was paid by Gardenhire, and the title obtained after his death by Carrol, and all this with the assent of Carrol, without a fraudulent purpose as to creditors, and with the understanding that the 160 acres were to be thus saved for a home for Gardenhire, the father-in-law, Carrol would hold the legal title thus wrongfully obtained in trust for Gardenhire or his heirs, and the widow would be dowable in the land. But on the contrary, if this arrangement was a fraudulent device, as charged in Alley’s bill, by which Carrol was to get the legal title, and hold it in his name, to cover the property up from Gardenhire’s creditors, and especially from *232 complainant Alley, then the widow, claiming under and through her husband, and by virtue of her marital relation to him, would not be entitled to dower.
As to whether the arrangement by which the note was paid by Hoge, and he received the 64 acres of land and three 40 acre tracts, was a fraudulent device, as between Carrol and Gardenhire, we have found much difficulty in deciding.
The witnesses for the complainant and defendant, on the question of who did actually pay Hoge, Gar-denhire or Carrol, are about equally divided, each swearing circumstantially to his view of the case, and giving other facts going to sustain their respective views. The witnesses on the part of Alley (one of them, at least, having been a party as a friend in perfecting the arrangement, and in procuring Hoge to consent to the mode of payment in the small tracts of land) very well sustain his view of the transaction as to its details, and together with defendant himself, swear that Carrol had owned the land from the time of his purchase under sale of the clerk of this court, and had rented it regularly to Gardenhire up to his death.
When we take into consideration, however, two facts in the record, we are constrained to the conclusion that the arrangement as between Gardenhire and his son-in-law Carrol, was a fraudulent device to keep the title to the 160 acres of land covered up from creditors, and especially from Alley’s debt. It will be. remembered that Alley commenced his action of ejectment for the land under his purchase in 1846, *233 and that it was not settled till September, 1855, so that his contest for the land was pending at the time of this purchase by Carrol in 1848, and arrangement in 1849. And the other fact, as appears from the record filed, is that in the case of Elizabeth White, adm’x, v. Gardenhire, Carrol, et al., it was settled by final decree in this court, that the former conveyance of these lands to Carrol was fraudulent, as a device to cover up the property from Gardenliire’s creditors, and that Alley still had his debt against Gardenhire, in the event he failed to recover the land in the ejectment suit. It seems to us that the evidence altogether preponderates in. favor of the proposition that it was understood between Gardenhire and Carrol that the title was to be kept covered up in order that the old man should keep his home, and creditors be repelled from enforcing their claims against it.
This is further strengthened by the fact, that though Carrol claims to have arranged the payment of the note in 1849, there was an order made for his deed to be made by the clerk in 1853 only, and actually made in February, 1854, Why all this delay, and the title left in uncertainty, — in fact in no one so far as it appeared of record in the courts of the county where situated, and in this court only a report showing that Carrol had bought it, but no title made to him ?
These circumstances point to the fact of a continuance of a fraudulent design, such as had been attempted in the former conveyances to Carrol and Holloway, and a better planned and perfected arrange *234 ment for carrying it out, which seems to have been successful till the death of the old man in 1854.
It is insisted, however, that this bill can not be sustained without an administrator of Gardenhire before the court, and that all the creditors of Garden-hire should have been parties. This is unquestionably correct, as a general proposition, and if such objection had been taken by demurrer, it would have been sustained, but it was not done.
Shall we send this case back for the administrator to be made a party? We learn from the bill that he had removed from the county without making a settlement, at what time is not shown; but one thing is clear, that the claims of other creditors are extinguished by the bar of seven years, that lapse of time being an absolute bar to the recovery under act of 1715, c. 48, s. 9, carried into the Code, s. 2786, 1 Head, 248.
Under these circumstances, the administrator is merely a formal party and the creditors could effect nothing if made parties, besides no other assets are to •be administered.
As to the statute, of limitations to this claim, insisted on in argument, suffice it to say, it is not pleaded, nor could have been done successfully in this case, as the lien of the attachment in the original bill, and the pending of that suit, which is perpetuated by this bill, would have saved bar.
As to the defense of bankruptcy, urged in brief and argument, it is enough to say, no proof is introduced to sustain it.
*235 The decree of the Chancellor is reversed and decree entered here in accordance with this opinion, the costs to be paid, one-half out of proceeds of sale of land, balance by Carrol, except the costs of Matilda Gardenhire, incurred by her cross-bill and amended bill, which she will pay.